The argument is 22-2003, Torres v. DHS.  This is a classic case of the agency's broad discretion to decide... Based on the record, it's clear that the job responsibility of a deportation officer based on his performance work plans...  Your Honor, it's not just about Giglio. It's the... I think you need to answer that question. I think... I mean, that's a yes or no question. If he has zero chance of ever testifying, despite what his actual job duties sheet says, is Giglio aces or no? I think the assumption of the zero possibility is itself unlikely, and that's a... No, no, no. Okay. I'm not trying to trap you. I'm just trying to ask a hypothetical, and you're not giving me anything away if you answer the hypothetical candidly. If you know what the answer is, I know you know what the answer is, so just tell me what you think the answer is. If there is zero chance that this person will ever be called to testify, it's an absolute impossibility, his actual job duties, despite his position description, which may be overbroad, containing it. Giglio can't be a basis for firing somebody if they're never going to testify, right? Yes, that's correct, and that was not the only basis here. No, okay, but that was my hypothetical. If that was the only... So, to me, if that's the only basis here, then Giglio is not a sufficient basis to show a lack of rehabilitation. It depends on managerial discretion, Your Honor. Well, where is the managerial discretion explained here? That's my real problem in this case, is the assigning official didn't sufficiently tie up his actual job duties with Giglio. He said... Do you point me to anything in the record that specifically talked about, I am aware of what this person does, and he has or will be required to testify in the future? Not related to his role in terms of testifying in court and potentially being impeached under Giglio, but there is, at Appendix 1109, when he testified before the arbitrator, where he said that he lost confidence himself in Mr. Torres because there are often times when deportation officers are called upon to work independently without supervision, and he lost the ability for Mr. Torres to tell the truth and be honest. So I get that, but is that what the arbitrator relied on? I thought the basis for the arbitrator finding no rehabilitation was purely Giglio and not the deciding official's lack of confidence. It was not only that, it was his role as a law enforcement officer that there held to a higher standard of conduct, the fact that he could not trust his ability to tell the truth because he affirmed he certified three times in an attempt to cover up his lies, whereas when, as a deportation officer working in that role for the government for over 11 years, he knew better. But instead, at every opportunity to tell the truth, he decided to not tell the truth and to conceal it. And overall, that gravity of the offense is distinguishable from the criminal investigator case because a verbal statement that's incorrect, a misstatement or false statement is different than when you, as an officer before a court or before the government, when you're asserting something is accurate and the truth and you're affirming that in writing multiple times to get more money or in terms of his time in attendance or his overtime or in compliance with his deportation duties. In all those instances, he made false statements in writing and he certified to that offense. I get all that, but doesn't that all go to severity of the offense when we're talking about rehabilitation? It does, Your Honor. And to the extent that you are reweighing the evidence here, that is not this court's role to do. I'm saying that the arbitrator's finding of rehabilitation is either arbitrary or capricious or not supported by substantial evidence or an abuse of discretion, whichever one you want to standard, whichever way you characterize it. Because he relied to me, as I read it, told me that's wrong and he has to reconsider. I'm not suggesting that this is not a severe offense and it warrants a penalty, maybe a significant one. But if the arbitrator improperly considered one of the Douglas factors, doesn't it have to go back? Your Honor, the way to give the relevant Douglas factors to include the rehabilitative potential of Mr. Torres or the consistency of the punishment given across the agency for same or similar offenses, that primarily lies within the agency's broad discretion. And even if this was remanded... It lies within their discretion, but they can't act arbitrarily, correct? That is correct. I think the concern here that was expressed by Mr. Torres' attorney is there exists at least one other case in the same agency which had similar type of conduct and which resulted in only a 14-day suspension, despite the fact that that law enforcement officer is of a type more likely to offer testimony than Mr. Torres. So how is that not a comparator case and potentially relevant so that we ensure the agency is not acting arbitrarily? Your Honor, because all of that with the comparator case is speculation. The record is light in terms of what his supervisor or what in that particular instance considered. There is no reference... The record for that specific factor is light, but it's harmless error. So there's no indication that even if this case were to be remanded, that the decision of the deciding official or the arbitrator would be any different because the substantial evidence in this particular case, not the case that Mr. Torres would like this court to consider to re-weigh, in essence, how those factors should be considered. The evidence in this case supports that his direct first-line supervisor and those above him, that the agency in this instance lost trust and confidence in his ability to do... I see that line in this case and in other similar type of cases, and I'm always left wondering, you know, what... to say without any evidence, without any expert testimony or anything to say that Mr. Torres cannot be rehabilitated because I have lost trust in him. I believe this, to me, is an area where we approach an unreasonable decision by the deciding officer. Your Honor, the record indicates that the deciding officer did consider Douglas Factor VI. The record also indicates that the agency looked across nationwide for similar offenses regarding falsification or lack of candor. Your Honor, at what point does the personal, emotional level of trust of the deciding official come into play? It's not about personal... How am I supposed to review that? How can I review the deciding official's level of trust? There's nothing in the record, though, that permits me to do that. There is substance in the record in terms of the testimony of the direct-line supervisor, Mr. Torres, along with the deciding official. And no single factor is outcome determinative. So, one of the things that you've argued to us today is that, okay, there's potential particular impairment, but there's also... Mr. Ortega, is that the correct deciding official's name, Mr. Ortega? Yes, Your Honor. And Mr. Ortega's testimony included that he had lost trust in Mr. Torres. Is that correct? Yes, Your Honor. What do we do with the fact that during his testimony on page 1117, in particular page 148 of that miniscript deposition or testimony, what do we do with the fact that the reason he gave for having lost faith in Mr. Torres, the reason he gave for being suspicious that Mr. Torres would do this again, is because he said he remembered that another officer said he didn't, in fact, come home early to see his family. He came home early for a different reason. And then, as I understand it in this record, that was investigated and proved to be completely untrue, that the other person who the deciding official thought was offering testimony that Mr. Torres had an ulterior motive said that is completely false. So what do we do with that? To the extent that the deciding official said, I don't trust the guy, I agree with you, he said that. But the reason, the only reason he gave for not trusting him was that he thought Mr. Torres had an ulterior motive and he thought someone had represented that, that he had an ulterior motive for actually coming home. Because that would be different, right? For sure, if not only did the guy falsify his documents, but on top of that, he was lying during the investigation about what happened. I mean, Mr. Torres was completely honest in this investigation. That's what was found, you know, by the officials. What do we make of the fact that Mr. Ortega's testimony seems to hinge in some part on this belief, this belief that turns out to be inaccurate, that there was evidence that Mr. Torres had this ulterior motive? Your Honor, I have exceeded my time. May I answer your question? Yes, Your Honor. The record reflects that the deciding official considered Mr. Torres' basis for coming home early and he disagreed that that was a justifiable basis. Mr. Torres repeatedly indicated it was just to be with his family. Your Honor, I have one question. Are you familiar with what I'm talking about where Mr. Ortega, on page 149, are you familiar with this? Yes. Mr. Ortega claims that another DHS employee, that he believes another DHS employee, gave evidence that suggested that Mr. Torres did not come home early to see his family, the way he explained. And that turns out to be completely false. So what do we do with that? Because I think if Mr. Ortega thinks not only did the guy falsify stuff, but during the investigation he's lying about all of it, you know, you could kind of understand why he would have even less confidence. But it turns out that at least this rationale turns out to be completely untrue. Your Honor, shouldn't we, based on the Chief's question and what I was asking you before, shouldn't we look at this situation as a reason why we should not trust the reasonableness of the decision of the deciding official? The reasonableness of the deciding official didn't just stem on the reason Mr. Torres provided for lying officially in certified records. It could have easily been resolved whether it was to be with his family or for some other reason. That does not justify his offense. And to the extent that this Court disagrees... But it's not about justifying his offense. Nobody said that. What I'm saying to you is Mr. Ortega, the deciding official, seems to have based part of his rationale on why Mr. Torres is not trustworthy and therefore not capable of rehabilitation on something that turned out to be completely wrong. There was no proof in this record anywhere that there was an alternative motive for Mr. Torres. Yet Ortega thought that and even told in his testimony, well, I think there's an affidavit in here that says this, and there wasn't. So to the extent that we're talking about rehabilitation, we've got a deciding official that thinks Mr. Torres has lied during the investigation and gave testimony to that effect and it turns out he's wrong. It didn't happen. What do we do with that? Doesn't that affect his analysis, potentially, about whether Mr. Torres is capable of rehabilitation? Your Honor, if there was any kind of error of that extent in what the deciding official considered or misunderstood in terms of what he believed the record supported, what evidence there was to exist the basis of Mr. Torres' return, that would just be harmless based on his testimony of considering... We're talking about rehabilitation, and let's just assume there's two bases for the deciding official's conclusion that there's no rehabilitation petition. One is people you know. Let's assume that's off the boards because we think that there's no evidence to show that he's actually going to have to testify. So you're left with your backup position, which was the deciding official said he lost trust in him. Let's assume that the deciding official's explanation for why he lost trust is just wrong. It's factually wrong. He didn't apprehend the true facts. How can we rely on that lost trust if it's based upon a factual mistake? And this is hypothetical, so don't tell me other things that support it. If those two things are wrong, one's based upon an arbitrary application of people you know, one based on a factual misapprehension, you have no basis for the rehabilitation finding, right? Well, the weight that the deciding officer considered Douglas Factor No. 1, the seriousness of the defense... No, no, no. We're talking about rehabilitation. Please, you know better than this. You have to answer the hypotheticals. Don't give the law student a misimpression that it's okay to do this. I don't want to talk about the severity of the offense. You win on the severity of the offense. All we're talking about is rehabilitation. And so the two proper arguments for no rehabilitation are just wrong. We have to send it back again, right? I know you don't agree with the hypothetical, but if that's the case, you have to agree that it goes back. Your Honor, the government respectfully disagrees that... No, you have to explain to me why you disagree then. I mean, you can't make that assertion. You know, your office knows better. I'm asking you a hypothetical which says there's only two bases for the no rehabilitation finding. They're both incorrect. There's no other basis. Then we have to send it back on a rehabilitation bill, right? If it's limited to those specific factors, yes, Your Honor. But here we have a balancing test. There's no bright-line rules. There's multiple factors for the agency and its broad discretion to consider. And the removal penalty here was substantially supported within their broad discretion. And the government respectfully requests that this court not re-weigh that evidence and affirm the decision below. Thank you, Ms. Finn. Mr. Sakai, Ms. Finn. Thank you, Your Honors. May it please the Court. I'll be brief. Two quick points on rebuttal. First, just to respond to what my opposing colleague has mentioned. For purposes of gigolio, there is no difference between whether it was a written falsification or verbal misrepresentation. With respect to the loss of trust, respectfully, that exists for every single law enforcement officer, or any employee for that matter, who has been charged with sustained charges of an act of dishonesty, as we have here. The question really comes down to the Douglas factor. Can that officer, can that employee be rehabilitated from that loss of trust? And the record here is wholly absent of that. And in addition, if Mr. Ortega, the deciding official, had as one of the bases for that loss of trust, something that turns out to be not true, then indeed, to Your Honor's questions, that would be grounds for the findings not being supported by substantial evidence. So what is the relief that you are seeking from us? So obviously, this court has the power to, it generally does not impose its own penalties. It generally vacates and remands below for a penalty. In this case, we are asking for mitigation. And then it would be up to the decision maker, in this case the arbitrator, to determine the appropriate penalty that is something less harsh than removal. I like that answer. Thank you for not standing up and telling me that I should decide the new penalty. Because that wouldn't be proper. And, you know, I'm sure that, you know, you were maybe a little bit tempted to say that. And it wouldn't be proper. The most we can give you is a vacate and remand. That is correct, Your Honor. Thank you. Counsel, I thank both counsels. Thank you, Your Honors.